UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JILL ADAMS,<br>*on behalf of herself and all others*<br>*similarly situated,*<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>PSP GROUP, LLC, *d/b/a*<br>*Pet Supplies Plus,*<br><br>　　　　　Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)　　No. 4:22-CV-1210 RLW<br>)<br>)<br>)<br>)<br>)<br>) |

**MEMORANDUM AND ORDER**

This matter is before the Court on a motion to dismiss filed by Defendant PSP Group, LLC, doing business as Pet Supplies Plus, (hereinafter "Defendant" or "Pet Supplies Plus"). (ECF No. 30). Defendant moves pursuant to Fed. R. Civ. P. 12(b)(1), (2), and (6) to dismiss Plaintiff Jill Adams's First Amended Complaint for lack of standing, lack of personal jurisdiction, and for failure to state a claim. Also before the Court is Defendant's Motion to Transfer. (ECF No. 34). Defendant moves that the case be transferred to the United States District Court for the Western District of Washington pursuant to 28 U.S.C. § 1404 or, alternatively, under the first-filed rule. Plaintiff Adams opposes both motions, which are fully briefed and ripe for review.[1] For the reasons that follow, the Court denies Defendant's Motion to Transfer and grants Defendant's Motion to Dismiss for lack of subject matter jurisdiction. Plaintiff does not have standing to bring her claims in federal court.

---

[1] Also before the Court are Defendant's Motions for Leave to File Supplemental Authority in Support of its Motion to Dismiss. (ECF Nos. 44 and 45). The Court concurs with Plaintiff that the filings contain substantive argument and are effectively surreplies. The Court does not require additional briefing to decide the issues at bar and denies the motions.

## I. Background

Pet Supplies Plus offers pet-related products for sale through its website, www.petsuppliesplus.com. Plaintiff Jill Adams alleges in her First Amended Complaint (hereinafter "Complaint") that Pet Supplies Plus unlawfully intercepts the electronic communications of visitors to its website. According to the Complaint, Defendant directed third parties, who are not named as defendants in this suit, to embed on its website Session Replay Code, which is then deployed on visitors' internet browsers. Session Reply Code is capable of tracking and recording in real time "mouse or finger movements, clicks, keystrokes (such as text being entered into an information field or text box), URL of web pages visited, and/or other electronic communications ("Website Communications"). (ECF No. 27 at 1). Session Replay Code, such as that implemented on www.petsuppliesplus.com, enables website operators to record, save, and replay website visitors' interactions on a website.

The Complaint alleges that Session Replay Code allows a website to capture and record "actions that reveal the visitor's personal or private sensitive data," even when the visitor does not intend to submit his or her data to the website. (ECF No. 27 at 9). "For example, if a user writes information into a text form field, but then chooses not to click a 'submit' or 'enter' button on the website, the Session Replay Code may nevertheless cause the non-submitted text to be sent to the designated event-response-receiving server before the user deletes the text or leaves the page. This information will then be viewable to the website owner when accessing the session replay." (ECF No. 27 at 11). The Complaint further alleges, "because the Session Replay Code records not only the contents of Plaintiff's intended communications, but also documents and records content Plaintiff does not choose to communicate, the Session Replay Code acts to invade the privacy of the user." (Id.) Information captioned from a website visit by Session Replay Code is sent to a server. (ECF No. 27 at 10).

2

According to the Complaint, Pet Supplies Plus uses various Session Replay Codes from third-party providers on its website to track and analyze website visitors' interactions with www.petsuppliesplus.com.  One Session Replay Code Defendant uses is Clarity, which was developed by Microsoft.  Plaintiff alleges Clarity offers the following three standard approaches for masking sensitive information collected from a user's interactions with a website: (1) strict – all text entered by a user is purportedly masked; (2) balanced – sensitive text entered into certain specifically pre-coded fields, such as passwords and credit card information, is masked; and (3) relaxed – no text entered by a user is masked.  Approaches can also be customized.  Plaintiff does not allege which approach Pet Supplies Plus uses on its website.

Plaintiff alleges she visited www.petsuppliesplus.com on her device while she was located in Missouri, although she does not allege when she visited the website.  She also does not allege that she made a purchase on the website.  The Complaint alleges the following:

> During Plaintiff's visit to www.petsuppliesplus.com and its subpages, Plaintiff visited the website to find where the nearest brick and mortar store was located. As a result of Plaintiff's interactions (e.g., clicking buttons and links, etc.) with the website, Plaintiff became informed of the location of the nearest Pet Supplies Plus store. As a result, Plaintiff then purchased a product at the physical Pet Supplies Plus store identified on the Pet Supplies website.

(ECF No. 27 at 18-19).  Plaintiff does not specify what information she shared on the website, if any.  For example, Plaintiff does not allege what information she typed or entered into the website's data fields.  Plaintiff does allege that when she visited Pet Supplies Plus's website, the contents of her communications with the website were intercepted by Session Replay Code and simultaneously transmitted to third-party Session Replay Providers.  (ECF No. 27 at 23).

The Complaint alleges that Defendant never alerted or asked Plaintiff for permission to watch, intercept, and record her visit to Defendant's website using Session Replay Code.  It also alleges Plaintiff never consented to being watched or having her electronic communications on

3

Defendant's website intercepted by Defendant or anyone acting on Defendant's behalf, and she was not given the option to opt out.

In her Complaint, Plaintiff brings the following eleven counts against Pet Supplies Plus pursuant to state and federal law: violations of the Missouri Wiretap Act, Mo. Rev. Stat. §§ 542.400, et seq., (Count I); violations of the Missouri Merchandising Practices Act ("MMPA"), Mo. Rev. Stat. §§ 407.010, et seq., (Count II); Invasion of Privacy – Intrusion Upon Seclusion (Count III); Trespass to Chattels (Count IV); Conversion to Chattels (Count V); Replevin (Count VI); violations of the Electronic Communications Privacy Act – Unauthorized Interception, Use, and Disclosure, 18 U.S.C. §§ 2511(1), et seq., (Count VII); violation of the Electronic Communications Privacy Act – Unauthorized Divulgence by Electronic Communications Service, 18 U.S.C. § 2511(3)(a), (Count VIII); violation of Title II of the Electronic Communications Privacy Act, 18 U.S.C. §§ 2701, et seq., (Count IX); violation of Title II of the Electronic Communications Privacy Act, 18 U.S.C. §§ 2702 et seq., (Count X); and violation of the Computer Fraud and Abuse Act ("CFAA") 18 U.S.C. §§ 1030, et seq., (Count XI).[2]

Plaintiff seeks to bring this lawsuit as a class action suit. Plaintiff brings this action individually and on behalf of a Missouri class. Plaintiff also seeks to bring claims on behalf of a nationwide class. Plaintiff seeks compensatory, statutory, and punitive damages, attorneys' fees, and costs.

## II. Discussion

### A.     Defendant's Motion to Transfer Venue

The Court will first address Defendant's motion to transfer. In its motion, Pet Supplies Plus seeks to have this case transferred, pursuant to 28 U.S.C. § 1404(a), to the United States District Court for the Western District of Washington, where similar suits involving Session Reply

---

[2] Plaintiff's state common law claims are brought under Missouri law.

4

Code are pending. Alternatively, Defendant argues that the Court should transfer this case to the Western District of Washington under the first-filed rule, because Plaintiff and her counsel filed a similar lawsuit involving the same software and nearly identical factual allegations against Zillow Group, Inc., which is currently pending in the Western District of Washington. Defendant argues transfer would allow for consolidation of this action with related actions and, therefore, avoid duplicative litigation, potentially inconsistent results, and eliminate unnecessary expense to the parties and courts.

1. Section 1404(a)

Section 1404(a) provides that, "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The determination whether to grant or deny a request to transfer under § 1404(a) is within the sound discretion of the trial court. Hubbard v. White, 755 F.2d 692, 694 (8th Cir. 1985).

The first step in the Court's § 1404(a) analysis is to determine whether the action "might have been brought" in the Western District of Washington. In other words, venue must be proper in the Western District of Washington.

> Under the venue statute, a civil action may be brought in federal court in:
>
> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
>
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
>
> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S. § 1391(b). Section 1391(c) further provides:

5

> an entity with the capacity to sue and be sued in its common name under applicable law, whether or not incorporated, shall be deemed to reside, if a defendant, in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question and, if a plaintiff, only in the judicial district in which it maintains its principal place of business.

28 U.S.C. § 1391(c).

Defendant does not assert that it is a resident of Washington. Rather, it asserts that "a substantial part of the events or omissions giving rise to the [Plaintiff's] claim[s]" occurred in in the Western District of Washington, where Microsoft is incorporated and headquartered. Defendant argues that the events in the Complaint center around Microsoft's development and deployment of Clarity, which primarily occurred in Washington.

In support of its motion, Defendant cites to Popa v. PSP Grp., LLC, No. 2:22-CV-1357-NR, 2023 WL 2243079, at *1 (W.D. Pa. Feb. 27, 2023), a Session Replay Code case that was transferred from the Western District of Pennsylvania to the Western District of Washington pursuant to § 1404. In Popa, however, the plaintiff sued both Pet Supplies Plus and Microsoft. Microsoft moved, with the consent of Pet Supplies Plus, to transfer the case to Washington. The district court in Popa found the case could have been brought in Washington, because Microsoft is headquartered in Redmond, Washington, and the complaint at issue "challenge[d] the lawfulness of the Clarity software, the development and deployment of which occurred in Washington." Id. at *2.

The same cannot be said here. The Eighth Circuit has instructed that when determining venue, a "court's focus must be on relevant activities of the defendant." Steen v. Murray, 770 F.3d 698, 704 (8th Cir. 2014). Microsoft is not a named defendant in this suit, and its conduct does not form the basis of any of Plaintiff's claims. While Clarity, which was developed by Microsoft, is alleged to be one of the Session Reply Codes Defendant embedded on its website, it is Defendant's conduct Plaintiff is challenging in this suit, not Microsoft's. There are no

6

allegations of any conduct by Defendant in the Western District of Washington. In fact, there are no allegations in the Complaint that Pet Supplies Plus has <u>any</u> connections with the State of Washington, or that Plaintiff does.

Defendant is alleged to be organized under the laws of Delaware with its principal place of business in Ohio.[3] Plaintiff, who is a citizen of Missouri, alleges that Defendant's purposeful and tortious acts were directed at Missouri, Defendant marketed, sold goods, and collected real-time data from Missouri, and she accessed Defendant's website in Missouri and shopped in a Pet Supplies Plus store located in Missouri. The Complaint does not allege that Plaintiff's information and/or data was transmitted to Washington. The fact that Clarify, a Session Replay Code Defendant used on its website, was developed by a Washington corporation in Washington, without more, does not confer venue in the Western District of Washington. See <u>Steen</u>, 770 F.3d at 704 ("an event does not 'give rise to the claim' simply because the alleged wrongful conduct would have been impossible without the event"). The Court concludes this case could not have been brought in the Western District of Washington under § 1391 and denies Defendant's motion to transfer pursuant to § 1404(a) on this ground.

    2.  <u>First-filed rule</u>

Defendant also argues this case should be transferred to the Western District of Washington under the first-filed rule. Defendant points to the fact that Plaintiff and her counsel filed suit against Zillow Group, Inc., <u>Adams et al v. Zillow Group, Inc.</u>, 4:22-CV-1023 JAR ("<u>Adams-Zillow</u> Lawsuit"), in the Eastern District of Missouri 48 days before the above-captioned case was filed, and Plaintiff agreed to transfer the <u>Adams-Zillow</u> Lawsuit to the Western District of Washington six days before filing this action against Pet Supplies Plus. Defendant argues that

---

[3] Defendant asserts in its motion to dismiss for lack of personal jurisdiction that it is headquartered in Michigan.

7

because the allegations in the Adams-Zillow Lawsuit are nearly identical to those in the present suit, the Court should apply the first-filed rule to transfer this action to the Western District of Washington.

"To conserve judicial resources and avoid conflicting rulings, the first-filed rule gives priority, for purposes of choosing among possible venues when parallel litigation has been instituted in separate courts, to the party who first establishes jurisdiction." Nw. Airlines, Inc. v. Am. Airlines, Inc., 989 F.2d 1002, 1006 (8th Cir. 1993). As the Eighth Circuit has explained, "the doctrine of federal comity permits a court to decline jurisdiction over an action when a complaint involving the same parties and issues has already been filed in another district." Orthmann v. Apple River Campground, Inc., 765 F.2d 119, 121 (8th Cir. 1985) (citing Pacesetter Sys., Inc. v. Medtronic, Inc., 678 F.2d 93, 94–5 (9th Cir. 1982)). Where there are two courts with concurrent jurisdiction, the first court in which jurisdiction attaches has priority to consider the case. Id. (citing Hospah Coal Co. v. Chaco Energy Co., 673 F.2d 1161, 1163 (10th Cir. 1982)). "The purpose of this rule is to promote efficient use of judicial resources." Id.

In general, courts look at three factors when deciding to apply the first-filed rule: (1) timing of events; (2) the similarity of the parties involved, and (3) the similarity of the claim or issues at stake. Baatz v. Columbia Gas Transmission, LLC, 814 F.3d 785, 789 (6th Cir. 2016). Courts enjoy wide discretion in applying the first-filed rule, and it "is not intended to be rigid, mechanical, or inflexible, but should be applied in a manner serving sound judicial administration." Id. at 121; see also Nw. Airlines, Inc., 989 F.2d at 1004 (first-filed rule is "to be applied in a manner best serving the interests of justice").

The Court finds the Adams-Zillow Lawsuit is not parallel to the present case. In the Adams-Zillow Lawsuit, Plaintiff Adams claims that Zillow Group, Inc. ("Zillow") deployed Session Replay Code on its website, and by capturing her communications with its website, Zillow

8

wiretapped her communications, violated consumer protection statutes, and committed privacy torts. While the facts may be similar, and Plaintiff's theories are recovery are the same, the two causes of action are neither duplicative nor parallel. Zillow operates a real estate website and is headquartered in Seattle, Washington. Defendant does not argue that Zillow is related to Pet Supplies Plus. From all appearances, Pet Supplies Plus and Zillow are separate companies running two different websites, and there is no commonality in ownership or otherwise. While both defendants are alleged to have used Session Replay Code on their respective websites, there is nothing in the record to indicate a determination in one action would have an effect on the other action, as the suits involve separate conduct by two different defendants. This present action is not duplicative of Adams-Zillow Lawsuit, and the first-filed rule does not apply. See Orthmann, 765 F.2d at 121.

      B.     **Motion to Dismiss**

In its Motion to Dismiss, Defendant moves to dismiss Plaintiff's claims on a number of grounds. Defendant moves to dismiss Plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject jurisdiction. Defendant argues that the allegations in Plaintiff's Complaint fail to establish the required elements of Article III standing, and her suit should be dismissed for lack of federal subject matter jurisdiction. Defendant also moves to dismiss for lack of personal jurisdiction, and for failure to state a claim. Standing is a "threshold inquiry into federal court jurisdiction," therefore, the Court will address the standing issue first. Yeransian v. B. Riley FBR, Inc., 984 F.3d 633, 636 (8th Cir. 2021).

Article III of the U.S. Constitution "limits the category of litigants empowered to maintain a lawsuit in federal court" to those with "actual cases or controversies." Spokeo, Inc. v. Robins, 578 U.S. 330, 338 (2016), as revised (May 24, 2016). Federal courts are only authorized to hear cases or controversies that present actual imminent injury, which is caused by the named

9

defendants, and can be redressed by a favorable decision.  Id.  These requirements have been established as the constitutional minimum to ensure that federal courts adjudicate real disputes and not hypothetical or abstract claims.  Standing is jurisdictional and a threshold issue in every federal case.  Warth v. Seldin, 422 U.S. 490, 498 (1975); Disability Support All. v. Heartwood Enterprises, LLC, 885 F.3d 543, 547 (8th Cir. 2018).

Plaintiff, as the party invoking federal jurisdiction, bears the burden of demonstrating the following: (1) that she suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendants, and (3) that is likely to be redressed by a favorable judicial decision. Lujan v. Defs. of Wildlife, 504 U.S. 555, 560-61 (1992); United States v. Metro. St. Louis Sewer Dist., 569 F.3d 829, 833–34 (8th Cir. 2009).  When a case is at the pleading stage, the plaintiff must "clearly allege facts demonstrating" each element of standing.  Spokeo, Inc., 578 U.S. at 338 (citing Warth, 422 U.S. at 518) (cleaned up).

Defendant argues Plaintiff lacks Article III standing to bring her claims in federal court because she fails to allege that she suffered an injury in fact.  To establish injury in fact, Plaintiff must show that she "suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" Spokeo, Inc., 578 U.S. at 339 (quoting Lujan, 504 U.S. at 560).  "A 'concrete' injury must be 'de facto'; that is, it must actually exist." Id. at 340. A concrete injury must be "real" and not "abstract." Id.  Certain tangible harms readily qualify as concrete injuries, such as physical injury and monetary damages.  An injury need not be "tangible" to be concrete, however.  Certain "intangible injuries can nevertheless be concrete," particularly if the intangible injury has been recognized historically as providing the basis for recovery, even if the harm may be difficult to prove or measure.  Id.

The Supreme Court has made clear that an alleged violation of a statute alone is not enough to confer standing.  Spokeo, Inc., 578 U.S. at 341.  Legislatures may enact laws creating causes

10

of actions for plaintiffs to sue defendants who violate legal prohibitions or obligations. "But under Article III, an injury in law is not an injury in fact." TransUnion LLC v. Ramirez, 141 S. Ct. 2190 (2021). "Only those plaintiffs who have been concretely harmed by a defendant's statutory violation may sue that private defendant over that violation in federal court." Id. (emphasis in original).

In support of her argument that she has standing in this case, Plaintiff does not assert she suffered a tangible injury, such as physical injury or money damages, but rather argues that she suffered harms from Defendant's violations of wiretapping statutes, which have a close relationship to harms traditionally recognized as providing the basis for invasion of privacy torts. Plaintiff also argues that she has alleged a concrete harm because she pleaded the state common law claim of intrusion upon seclusion.

Invasion of privacy torts have been recognized by American courts for over a century. See Restatement (Second) of Torts § 652A (Am. Law Inst. 1965) (noting the right to privacy was first recognized by an American court in 1905, and "a right to privacy is now recognized in the great majority of the American jurisdictions that have considered the question"). Four distinct torts of invasion of privacy have been recognized by the courts, each of which "represents an interference with the right of the plaintiff … 'to be let alone.'" Sullivan v. Pulitzer Broad. Co., 709 S.W.2d 475, 477 (Mo. 1986). The Missouri Supreme Court has described the four invasion of privacy torts as follows:

(1) Intrusion upon the plaintiff's seclusion or solitude, or into his private affairs;
(2) Public disclosure of embarrassing private facts about the plaintiff;
(3) Publicity which places the plaintiff in a false light in the public eye;
(4) Appropriation, for the defendant's advantage, of the plaintiff's name or likeness.

Id.

11

Plaintiff maintains her statutory claims, and more specifically her wiretap claims, are related to the tort of intrusion upon seclusion. A defendant is liable for intrusion upon seclusion for intruding "upon the solitude or seclusion of another or his private affairs or concerns" if the intrusion would be "highly offensive to a reasonable" person. Restatement (Second) of Torts § 652B. See also Cox Broad. Corp. v. Cohn, 420 U.S. 469, 493–94 (1975) (discussing the "developing law surrounding the tort of invasion of privacy"). Under Missouri law, three elements are required to establish a claim for intrusion upon seclusion: (1) the existence of a secret and private subject matter; (2) a right in the plaintiff to keep that subject matter private; and (3) the obtaining by the defendant of information about that subject matter through unreasonable means. St. Anthony's Med. Ctr. v. H.S.H., 974 S.W.2d 606, 609–10 (Mo. Ct. App. 1998) (citing Corcoran v. Sw. Bell Tel. Co., 572 S.W.2d 212, 215 (Mo. App. 1978)). See also Hester v. Barnett, 723 S.W.2d 544, 562 (Mo. Ct. App. 1987).

In her Memorandum in Opposition to Defendant's Motion to Dismiss, Plaintiff argues that Defendant's "violations of wiretapping statutes constitute concrete privacy harms," which subject Defendant to liability and, therefore, she need not allege or demonstrate further harm to establish standing. (ECF No. 38 at 5-6). In other words, wiretapping statutes are designed to protect privacy rights, therefore, an alleged violation of a wiretapping statute must involve a harm to privacy rights, which have been historically recognized as forming the basis for privacy torts.

Plaintiff's argument is contrary to established Supreme Court precedent, as it would mean any alleged violation of a wiretap statute necessarily constitutes an injury in fact even without allegations of actual harm. The Supreme Court "has rejected the proposition that 'a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right.'" TransUnion, 141 S. Ct. at 2205 (quoting Spokeo, 578 U.S. at 341). ! !It is not enough for Plaintiff to point to harms the

12

wiretapping statutes were designed to protect, which she refers to as "privacy harms."  Rather, federal courts are to examine whether a plaintiff has clearly alleged facts demonstrating she suffered an intangible harm that is "closely related" to a harm that has been recognized historically as providing the basis for recovery.  Id. at 2208 (examing the facts as to the harm sustained by each class of plaintiffs).  The question before the Court is whether Plaintiff adequately alleges facts showing a harm that is closely related to the harm that forms the basis of the tort of intrusion upon seclusion.

In her Complaint, Plaintiff alleges that she visited Defendant's www.petsuppliesplus.com website, and "[a]s a result of Plaintiff's interactions (e.g., clicking buttons and links, etc.) with the website, Plaintiff became informed of the location of the nearest Pet Supplies Plus store."  (ECF No. 27 at 19).  Notably, Plaintiff did not make a purchase on the website.  From the information she obtained on the website, Plaintiff visited a brick-and-mortar store and purchased bird seed.

Plaintiff further alleges Session Replay Code was operative on www.petsuppliesplus.com and instantaneously captured her communications during her visit to the website and sent the communications to various third-party Session Replay Providers.  A large portion of the Complaint is devoted to explaining Session Replay Code and its capabilities, for example, the type of and the extent to which information and communications can be sent to Session Replay Providers.  The Complaint also describes a specific Session Replay Code, Clarity, and its capabilities and available settings.  But importantly, the Complaint does not allege or describe what information Plaintiff provided to Defendant while she was visiting its website.  There are no allegations that Plaintiff typed any information about herself, such as her name, address, phone number, or email address into data fields on Defendant's website.  Plaintiff also does not allege that she shared any financial information, such as credit card or banking routing numbers.  The Complaint only describes Plaintiff obtaining information about physical store locations through

13

vaguely described "interactions" with the website, which she characterizes as clicking buttons and links.  (ECF No. 27 at 19).

The Court finds Plaintiff's alleged harm is not closely related to the harm upon which the tort of intrusion of seclusion is based – or any invasion of privacy tort for that matter – because Plaintiff has not alleged that Pet Supplies Plus intercepted her private communications or personal information.  The Supreme Court instructs that "[i]n looking to whether a plaintiff 's asserted harm has a 'close relationship' to a harm traditionally recognized as providing a basis for a lawsuit in American courts, we do not require an exact duplicate."  TransUnion, 141 S. Ct. at 2208.  That said, there must be some correlation, and here there is none.  Intrusion upon seclusion involves obtaining or intercepting private, personal communications or information about a person in a matter that is highly offensive or unreasonable.  Restatement (Second) of Torts § 652B.  See also St. Anthony's Med. Ctr., 974 S.W.2d at 609–10.  Plaintiff does not allege that she input any sensitive, personal, or confidential information while on www.petsuppliesplus.com.  In fact, there are no specific allegations that she shared any information about herself.  Plaintiff has not identified any specific information she disclosed that implicates a protectable privacy interest.  In short, Plaintiff has not identified a harm to her privacy interest.[4]

---

[4] Very recently, a number of district courts across the country have addressed Article III standing in cases involving Session Replay Code with similar theories of recovery.  These courts held where there are no allegations that the plaintiff shared personal or sensitive information on the website in question, the plaintiff has not adequately alleged a concrete harm to support Article III standing.  See Straubmuller v. Jetblue Airways Corp., No. CV DKC 23-384, 2023 WL 5671615, at *4 (D. Md. Sept. 1, 2023) (finding plaintiff lacked Article III standing because allegations in the complaint that Session Replay Code on the defendant's website captioned the plaintiff's keystrokes and clicks were insufficient to allege a concrete harm that bears a close relationship to the substantive right of privacy); Cook v. GameStop, Inc., No. 2:22-CV-1292, 2023 WL 5529772, at *2 (W.D. Pa. Aug. 28, 2023) (same); Mikulsky v. Noom, Inc., No. 3:23-CV-00285-H-MSB, 2023 WL 4567096, at *5 (S.D. Cal. July 17, 2023) (same); Lightoller v. Jetblue Airways Corp., No. 23-CV-00361-H-KSC, 2023 WL 3963823, at *4 (S.D. Cal. June 12, 2023) (same); Massie v. Gen. Motors, No. 21-cv-787-RGA, 2022 WL 534468, at *5 (D. Del. Feb. 17, 2022) ("'Eavesdropping' on communications that do not involve personal information, personally identifiable information, or information over which a party has a reasonable expectation of privacy

The harm upon which Plaintiff's intrusion upon seclusion claim is based is the same harm upon which her wiretap claims are based – and, in fact, all of her claims are based – that Pet Supplies Plus tracked and recorded her clicking buttons and links on its website in order to obtain the physical location of one of Defendant's stores.  Plaintiff's factual allegations simply do not rise to the level of a concrete harm.  Plaintiff has failed to adequately allege that she suffered a concrete harm and, therefore, Plaintiff has failed to satisfy the injury in fact element for Article III standing.  Because Plaintiff lacks standing, the Court must dismiss Plaintiff's claims for lack of subject matter jurisdiction.

### III.    Conclusion

In sum, the Court denies Defendant's Motion to Transfer to the Western District of Washington.  The Court finds venue is not proper in the Western District of Washington and that the first-filed rule does not apply.  The Court further finds Plaintiff has failed to allege or demonstrate the required elements of Article III standing, as she has not shown that she suffered a concrete injury in fact.  The Court therefore does not have subject matter jurisdiction over this dispute.  Finding it lacks subject matter jurisdiction, the Court does not have the authority to proceed on the merits of this case and declines to address the other issues raised in Defendant's motion to dismiss.  The Court dismisses this cause of action without prejudice.  Dalton v. NPC Int'l, Inc., 932 F.3d 693, 696 (8th Cir. 2019) (dismissal for lack of standing is without prejudice.)

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion to Transfer this case to the United States District Court, Western District of Washington is **DENIED**.   [ECF No. 34]

---

does not amount to a concrete injury.").  The Court concurs with the reasoning in these cases.

**IT IS FURTHER ORDERED** that Defendant's Motions for Leave to File Supplemental Authority in Support of its Motion to Dismiss are **DENIED**.   [ECF Nos. 44 & 45]

**IT IS FURTHER ORDERED** that Defendant's Motion to Dismiss Plaintiff's First Amended Complaint is **GRANTED in part** and **DENIED in part** without prejudice.   [ECF No. 30].   Defendant's Motion to Dismiss for lack of subject matter jurisdiction is **GRANTED,** in that Plaintiff does not have standing to bring her claims in federal court.   In all other respects, Defendant's Motion to Dismiss is **DENIED** without prejudice, as the Court lacks subject matter jurisdiction.

The Court will issue a separate Order of Dismissal.

_____
**RONNIE L. WHITE**
**UNITED STATES DISTRICT JUDGE**

Dated this   13th   day of September, 2023.